William L. Berg (Bar Roll #92095)
BERG INJURY LAWYERS
640 Watt Avenue
Suite 100
Sacramento, CA 95864
Telephone: (916) 641-5800
Facsimile: (916) 641-2629

**ADR**

**FILED**

**E-FILING**

ⁿⁿⁿ JAN 10 P 2: 53

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Fee Paid
NP
③

Philip Bohrer (Louisiana #14089)
Scott E. Brady (Louisiana #24976)
BOHRER LAW FIRM
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 925-5297
Facsimile: (225) 231-7000

Attorneys for Plaintiff,

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

# C08 00180 HRL

| | |
|---|---|
| DENISE VELA | Civil Action No:_____ |
| Plaintiff, | |
| v. | JUDGE: |
| ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA LP | MAGISTRATE: |
| Defendants. | **PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED** |

**BY FAX**

The plaintiff, Denise Vela, through undersigned counsel, files this Complaint for

Damages, and alleges as follows:

## NATURE OF THIS ACTION

1.    Plaintiff is a resident and citizen of the State of California and is bringing this action as a

direct and proximate result of the wrongful conduct of Defendants AstraZeneca

1

Pharmaceuticals LP and AstraZeneca LP (hereinafter referred to as the "AstraZeneca Defendants") in connection with the design, manufacturing, testing, packaging, distribution, marketing, labeling, and/or sale of the prescription drug quetiapine fumarate (hereinafter "Seroquel") an "anti-psychotic" medication belonging to a class of drugs referred to as "atypical anti-psychotics".

## PARTIES

2.    Plaintiff is a resident and citizen of the State of California.

3.    Plaintiff was prescribed and ingested Seroquel.

4.    As a result of using and ingesting Seroquel, Plaintiff was caused to suffer serious injuries.

5.    Defendant AstraZeneca Pharmaceuticals LP is a Delaware limited partnership doing business in the State of California.

6.    Defendant AstraZeneca Pharmaceuticals LP is the Untied States Subsidiary of AstraZeneca PLC, and was created as a result of the union of Zeneca Pharmaceuticals and Astra Pharmaceuticals LP in the United States after the 1999 merger of the two entities.

7.    Defendant AstraZeneca Pharmaceuticals LP's principal place of business is in Delaware at the following address: 1800 Concord Pike, P.O. Box 15437, Wilmington, DE   19850.

8.    Upon information and belief Defendant AstraZeneca Pharmaceuticals LP's general and limited partners are: AstraZeneca AB, a Swedish corporation with its principal place of business in Sweden; Zeneca, Inc., a Delaware corporation with its principal place of business in Delaware; Astra USA, Inc., a New York corporation with its principal place of business in Delaware; and Astra US Holdings Corporation, a Delaware corporation with its principal place of business in Delaware.

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

9.     Therefore, Defendant AstraZeneca Pharmaceuticals LP is a citizen of Delaware, New York and Sweden.

10.     Defendant AstraZeneca LP is a Delaware limited partnership and upon information and belief is doing business in the State of California.

11.     Defendant AstraZeneca LP's principal place of business is in Delaware at 1800 Concord Pike, P.O. Box 15437, Wilmington, DE 19850.

12.     Upon information and belief, Defendant AstraZeneca LP's general partner is AstraZeneca Pharmaceuticals LP, which as stated above is a citizen of Delaware, New York, and Sweden.

13.     Defendant AstraZeneca LP's sole limited partner is KBI Sub Inc., which is incorporated in the State of Delaware and its principal place of business is in New Jersey.

14.     Therefore, Defendant AstraZeneca LP is a citizen of Delaware, New York, New Jersey and Sweden.

15.     At all times relevant herein, the AstraZeneca Defendants were in the business of researching, designing, testing, monitoring, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including Seroquel, and other products in the State of California for use and consumption by citizens of California, including plaintiff.

16.     Upon information and belief, and at all times relevant herein, the AstraZeneca Defendants did business and were present in the State of California and are otherwise subject to the personal jurisdiction of the Court.

## JURISDICTION AND VENUE

17.     The Court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) as the amount in

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

controversy exceeds $75,000.00, excluding interest and costs.

18. At all relevant times herein, the AstraZeneca Defendants marketed, advertised and distributed the dangerous product in this district and thereby receiving substantial financial benefit and profits from sales of the dangerous product in this district such that venue is proper.

19. At all relevant times herein, the AstraZeneca Defendants were in the business of designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing, warranting and selling their product, Seroquel.

20. The AstraZeneca Defendants at all times relevant hereto designed, developed, manufactured, promoted, marketed, distributed, tested warranted and sold in interstate commerce including Texas the aforementioned prescription drug. The AstraZeneca Defendants do substantial business in the State of California and within this District, advertise in this District, receive substantial compensation and made misrepresentations and breaches of warranties in this District so as to subject them to *in personam* jurisdiction in this District. In engaging in the conduct alleged herein, each of the AstraZeneca Defendants acted as the agent of the other AstraZeneca Defendants or those AstraZeneca Defendants' predecessor in interest.

## FACTS

21. This is an action against the AstraZeneca Defendants on behalf of the Plaintiff who was prescribed the prescription drug Seroquel, which is an "anti-psychotic" medication belonging to a class of drugs referred to as "atypical anti-psychotics".

22. Plaintiff ingested the prescribed dosage of said drug in accordance with the prescription written for the Plaintiff.

PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED

23. Seroquel causes serious and sometimes fatal injuries including but not limited to, keotacidosis, pancreatitis, and diabetes mellitus, and other serious health problems associated with the onset of diabetes including heart disease, blindness, coma, seizures and death.

24. At all times relevant herein, the AstraZeneca Defendants, either directly or though their agents, servants, and employees, designed, manufactured, marketed, advertised, distributed, and sold Seroquel for the treatment of schizophrenia, bipolar disorder, and other "off-label" uses.

25. Those persons who were prescribed and ingested Seroquel, including Plaintiff, have suffered severe and permanent personal injuries, including diabetes, pancreatitis, hyperglycemia, diabetic keotacidosis, diabetic coma, and death, as well as other severe and permanent injuries.

### Seroquel's History

26. In September 1997, the Food and Drug Administration ("FDA") approved the newest "atypical anti-psychotic," Seroquel, for use in the United States. At that time, Seroquel was approved for use in dosages of 25mg, 100 mg and 200 mg tablets.

27. Seroquel is now available in 25 mg, 50 mg, 100 mg, 200 mg, 300 mg and 400 mg dosages.

28. Other atypical anti-psychotics include Zyprexia (Eli Lilly), Risperdal (Johnson & Johnson) and Abilify (Bristol-Myers Squibb), which have been in use in the United States since the early to mid 1990's.

29. Seroquel is a medication commonly prescribed to patients to aid in the treatment of mental disorders including schizophrenia. The pharmacologic action of Seroquel is

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

thought to be dependent on its ability to block or moderate the level of dopamine, a chemical found in the brain that in excessive amounts is believed to cause abnormal thinking and hallucinations. It appears to work primarily by blocking neurotransmitter sites of serotonin and dopamine, as well as histamine receptors.

30.    Seroquel was widely advertised, marketed and represented by the AstraZeneca Defendants, in its label, package insert, *Physicians Desk Reference* entry and otherwise, as a safe and effective atypical anti-psychotic.

31.    Seroquel was marketed heavily by the AstraZeneca Defendants as a safe and effective treatment for schizophrenia and the AstraZeneca Defendants' promised fewer side effects than other similar treatments including the other atypical anti-psychotics on the market.

32.    The AstraZeneca Defendants, through their marketing departments, sales managers, and field sales force and other agents, servants and employees promoted the drug for uses beyond its approved indications, offering incentives to doctors to increase prescriptions. Through these marketing efforts, the AstraZeneca Defendants were able to capture a larger market share in the anti-psychotic market.

33.    These marketing efforts were designed and implemented to create the impression in physicians', patients' and Plaintiff's minds that Seroquel was safe and effective and that it carried less risk of side effects and adverse reactions than other available treatments.

34.    The marketing and promotion efforts of the AstraZeneca Defendants, their agents, servants and/or employees served to overstate the benefits of Seroquel and minimize and downplay the risks associated with the drug.

35.    On May 6, 1999, the AstraZeneca Defendants were told by the FDA that materials they continued to distribute, despite a warning letter dated November 24, 1998, were

"determined to be false, lacking in fair balance, or otherwise misleading, and in violation

of the Federal Food, Drug and Cosmetic Act and the regulations promulgated

thereunder."

36.     The FDA had specific objections to numerous promotional materials that they directed be

"[I]mmediately discontinued...". These objections involved the AstraZeneca Defendants

use of promotional materials and included the following:

   a.     Materials that state or imply that Seroquel is effective in a broader range of
          mental conditions, including bipolar disorder and schizoaffective disorder, are
          misleading (e.g., brochures #SQ1035, #SQ1112).  Seroquel is indicated for the
          manifestations of psychotic disorders as determined by clinical trials in
          schizophrenic inpatients.  Application to broader or additional mental disorders
          would require substantiation from adequate and well-controlled studies designed
          to examine the specific mental conditions.

   b.     The mechanism of action of Seroquel, as well as other antipsychotic drugs, is
          unknown.  Therefore, materials that discuss how Seroquel "works" without
          stressing the theoretical nature of this information, are misleading (e.g., brochures
          #SQ1059, #PR 1048).

   c.     Materials in which the prominence and readability of the risk information fails to
          be reasonably comparable to the information regarding the effectiveness of
          Seroquel lack fair balance (e.g., journal ad #SQ1089, brochure #SQ1139).  In
          addition, materials that fail to disclose the important warnings and precautions
          (i.e., neuroleptic malignant syndrome, tardive dyskinesia, orthostatic hypotension,
          risk of cataract development, and seizures) are lacking fair balance because these
          are considered to be priority safety consideration (e.g., journal #SQ1088).

37.     The AstraZeneca Defendants made affirmative assertions of material fact, including but

not limited to, Seroquel was safe if used as directed, no specific laboratory tests were

recommended and Seroquel was safer than other alternative medications.

38.     The AstraZeneca Defendants knew these assertions to be false or recklessly failed to

ascertain their truth or falsity.

39.     The AstraZeneca Defendants also fraudulently concealed important safety information

from physicians, the FDA, the public and the plaintiff, including but not limited to the

7

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

AstraZeneca Defendants' awareness of numerous reports of diabetes associated with the use of Seroquel, beyond the background rate, and beyond the rate for other anti-psychotic agents. The AstraZeneca Defendants as manufactures of ethical drugs had a duty to disclose said information.

40.    The AstraZeneca Defendants were aware that the drug caused diabetes mellitus, pancreatitis and keotacidosis, but the AstraZeneca Defendants concealed such information and made misrepresentations that the drug was safe.

41.    The anti-psychotic drug market is one of the largest drug markets worldwide.

42.    The AstraZeneca Defendants viewed Seroquel as a blockbuster product with significant projected growth potential. In 2002 alone, Seroquel reached over $1.1 Billion in sales.

43.    Upon information and belief, Seroquel is one of the AstraZeneca Defendants' top-selling drugs.

44.    Since the AstraZeneca Defendants introduced Seroquel in 1997, over 24.6 million prescriptions have been made and it has been prescribed to more than 13 million people worldwide.

45.    In 2003, approximately seven million prescriptions for Seroquel were dispensed, resulting in more than $2 Billion in sales.

46.    IN 2005, Seroquel reached approximately $2.7 Billion in annual sales and controlled approximately 31% of the market share for atypical anti-psychotics.

47.    Worldwide sales for Seroquel in the first quarter of 2006 compared with sales a year ago in the same period were $807 million, up 27 percent

### Adverse Effects Related to Seroquel Use

48.    In an extensive independent study of over 8,000 New York mental health patients,

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

published in September of 2004, it was found that the risk of diabetes was over 300% higher in patients who took Seroquel.

49. The use of Seroquel was known by the AstraZeneca Defendants to cause serious and sometimes fatal injuries including, but not limited to, keotacidosis, pancreatitis, and diabetic mellitus, and other serious health problems associated with diabetes including heart disease, blindness, coma, seizures, and death.

50. In August, 2003, the AstraZeneca Defendants became further aware of the link between Seroquel and diabetes. These new reports, described in increased incidence of diabetes in patients receiving Seroquel, than in patients receiving older anti-psychotics, or even other atypicals, including Zyprexia, Clozaril, and Risperdal.

51. The reported risk associated with Seroquel and the onset of diabetes is nearly 3.34 times higher than older drugs used to treat schizophrenia, such as Haldol. According to these reports, compared to other drugs in its class, Zyprexia, (Eli Lilly & Co.) - 1.27 times more likely, and Risperadal (Johnson & Johnson) - 1.49 times more likely, Seroquel has a much greater increased association with the onset of diabetes mellitus than any other anti-psychotic on the market.

52. Consumers, including Plaintiff, who have used Seroquel, have available several alternative anti-psychotic medications.

53. In fact, in December 2000, the AstraZeneca Defendants knew that there was no clear evidence that Seroquel was more effective or better tolerated than conventional anti-psychotics including Haldol and Thorazine.

54. It should be noted that there is a significant difference among the costs of Haldol and Seroquel per month: $35 versus $414, respectively.

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

## Seroquel Causes Diabetes and Other Serious Injuries

55.  Shortly after the AstraZeneca Defendants began selling Seroquel, the AstraZeneca

Defendants began to receive reports of consumers who were using Seroquel suffering

from hyperglycemia, acute weight gain, exacerbation of diabetes mellitus (hereinafter

"diabetes"), development of diabetes, pancreatitis, and other several diseases and

conditions. The AstraZeneca Defendants knew, or should have been aware of these

reports.

56.  By July 2001, the AstraZeneca Defendants had received at least 46 reports of patients

taking Seroquel and developing hyperglycemia or diabetes mellitus, of which there were

21 cases of ketoacidosis or acidosis and 11 deaths. By December 31, 2003, the

AstraZeneca Defendants had received reports of at least 23 additional cases, bringing the

total to 69. Most of these patients developed the above conditions within six months of

their use of Seroquel.

57.  The AstraZeneca Defendants were or should have been aware of studies and articles in

1998 and 1999 confirming a link between drugs like Seroquel and new onset diabetes and

permanent hyperglycemia related adverse events. *Wirshing. DA, Novel Antipsychotics

and New Onset Diabetes.* Biol. Psychiatry, 1998: 15, 44:778-83; *Allison, DB,

Antipsychotic-Induced Weight Gain: A Comprehensive Research Synthesis.* Am. J.

Psychiatry, 1999:156:1686-96.

58.  Studies conducted in the United States and Europe have established that numerous

patients treated with Seroquel experienced a significantly higher incidence of severe and

permanent diseases and conditions, including dangerous rises in blood glucose levels.

PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED

## Defendants' Failure to Warn of the Dangers of Seroquel

59. At the time of the prescription of Seroquel to the Plaintiff, the AstraZeneca Defendants had not adequately warned Plaintiff or his/her physicians, and/or did not adequately and effectively communicate all warnings about the risk of diabetes, hyperglycemia, diabetic ketoacidosis, or other serious injuries caused by Seroquel.

60. The product warnings for Seroquel in effect during the relevant time period were vague, incomplete or otherwise inadequate, both substantively and graphically, to alert prescribing physicians as well as consumer patients of the actual risks presented by the use of this drug.

61. In fact, the product information section for Seroquel in the *Physicians Desk Reference* for the years 1999[1], 2000, 2001, 2002, 2003 and 2004, contains no statement in the WARNINGS section to alert anyone of the risks of diabetes, ketoacidosis or pancreatitis associated with the use of Seroquel.

62. However, in Japan, the AstraZeneca Defendants warned of the risks of diabetes since 2002.

63. The Japanese "label" for Seroquel provides, and has provided since 2002, a detailed warning regarding the risks of diabetes associated with Seroquel, and specifically informs physicians regarding the necessity of monitoring patients on Seroquel. At the time Plaintiff ingested Seroquel, the AstraZeneca Defendants had not adopted this label for the distribution of Seroquel in the United States.

64. The label the AstraZeneca Defendants issued in Japan, but not in the United States, warns

---

[1] First year in which information on Seroquel was published in the *Physicians Desk Reference.*

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

specifically of the diabetes risk, prominently in the beginning of the package label

stating:

a.  Quetiapine is contraindicated for use in patients with diabetes or a history of
    diabetes;

b.  Quetiapine should be used with caution in patients with risk factors for diabetes,
    including hyperglycemia, obesity or a family history if diabetes;

c.  Patients receiving quetiapine should be carefully monitored for symptoms of
    hyperglycemia and the drug should be discontinued if such symptoms occur. The
    symptoms of severe hyperglycemia include weakness, excessive eating, excessive
    thirst, and excessive urination; and,

d.  Physicians should educate patients and their family members about the risk of
    serious hyperglycemia associated with quetiapine and how to identify the
    symptoms of hyperglycemia.

65.  On September 11, 2003, the FDA informed the AstraZeneca Defendants that they must

make labeling changes to Seroquel, due to an increasing prevalence of diabetes-related

illnesses associated with this drug. The following information appeared in the

WARNINGS section for Seroquel in the 2005 *Physicians Desk Reference:*

> Hyperglycemia, in some cases extreme and associated with
> ketoacidosis or hyperosmolar coma or death, has been reported in
> patients treated with atypical antipsychotics, including Seroquel.
> Assessment of the relationship between atypical antipsychotic use
> and glucose abnormalities is complicated by the possibility of an
> increased background risk of diabetes mellitus in patients with
> schizophrenia and the increasing incidence of diabetes mellitus in
> the general population. Given these confounders, the relationship
> between atypical antipsychotic use and hyperglycemia-related
> adverse events is not completely understood. However,
> epidemiologic studies suggest an increased risk of treatment
> emergent hyperglycemia-related adverse events in patients treated
> with atypical antipsychotics. Precise risk estimates for
> hyperglycemia-related adverse events in patients treated with
> atypical antipsychotics are not available.
> Patients with an established diagnosis of diabetes mellitus who are
> started on atypical antipsychotics should be monitored regularly
> for worsening of glucose control. Patients with risk factors for
> diabetes mellitus (e.g., obesity, family history of diabetes) who are

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

starting treatment with atypical antipsychotics should undergo fasting blood glucose testing at the beginning of treatment and periodically during treatment. Any patient treated with atypical antipsychotics should be monitored for symptoms of hyperglycemia including polydipsia, polyuria, polyphagia, and weakness. Patients who develop symptoms of hyperglycemia during treatment with atypical antipsychotics should undergo fasting blood glucose testing. In some cases, hyperglycemia has resolved when the atypical antipsychotic was discontinued; however, some patients required continuation of anti-diabetic treatment despite discontinuation of the suspect drug.

66.    Recently, researchers at the National Institute of Mental Health published a report on atypical antipsychotics, including Seroquel, which found that the majority of patients in each group discontinued their assigned treatment owing to inefficacy or intolerable side effects or for other reasons and that the atypicals, including Seroquel, were no more effective than the older, cheaper, and still available conventional antipsychotic perphenazine. This report echoes the conclusions reported in the *British Medical Journal* in 2000.

67.    The AstraZeneca Defendants misrepresented and failed to appropriately warn consumers, including Plaintiff, and the medical and psychiatric communities of the dangerous risk of developing diabetes, pancreatitis, hyperglycemia, diabetic ketoacidosis, and diabetic coma, as well as other severe and permanent health consequences caused by Seroquel, and consequently placed their profits above the safety of its customers.

68.    By reason of the foregoing, Plaintiff has been severely and permanently injured and will require constant and continuous medical care and treatment.

### Plaintiff's Use of Seroquel

69.    Plaintiff was prescribed and began taking Seroquel as prescribed by her physicians.

70.    Plaintiff used Seroquel as prescribed and in a foreseeable manner.

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

71. As a direct and proximate result of using Seroquel, Plaintiff was seriously injured and/or has developed a permanent, life threatening condition.

72. Plaintiff, as a direct and proximate result of ingesting Seroquel, has suffered severe pain and has sustained permanent injuries and emotional distress.

73. Had Plaintiff known of the full extent of the risks and dangers associated with Seroquel, Plaintiff would not have taken Seroquel.

### EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

74. The running of any statute of limitation has been tolled by reason of the AstraZeneca Defendant's fraudulent conduct. The AstraZeneca Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and Plaintiff's prescribing physicians the true risks associated with taking Seroquel.

75. As a result of the AstraZeneca Defendant's actions, Plaintiff and Plaintiff's prescribing physicians were unaware, and could not reasonably known or have learned through reasonable diligence that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the AstraZeneca Defendants' acts and omissions.

76. Furthermore, the AstraZeneca Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the truth, quality and nature of Seroquel. The AstraZeneca Defendants were under a duty to disclose the true character, quality and nature of Seroquel because this was non-public information over which the AstraZeneca Defendants had and continue to have exclusive control, and because the AstraZeneca Defendants knew that this information was not available to the Plaintiff, her medical providers and/or to her health facilities. In addition, the AstraZeneca Defendants

are estopped from relying on any statute of limitation because of their intentional concealment of these facts.

77.    Plaintiff had no knowledge that the AstraZeneca Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the AstraZeneca Defendants, Plaintiff could not have reasonably discovered the wrongdoing at any time prior. Also, the economics of this fraud should be considered. The AstraZeneca Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks. Plaintiff and her medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identify of related health risks, and were forced to rely on the AstraZeneca Defendants' representations.

## COUNT I
## FRAUD

78.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

79.    As set forth under **FACTS** herein, and pending discovery, the AstraZeneca Defendants' representatives through national advertising, promotional campaigns, standardized package inserts, related materials, purchased or subsidized so-called expert opinions both orally and in print and in correspondence to healthcare professionals, and in submissions and reports to the FDA, and product information regarding the characteristics of and the quality of Seroquel, were false, misleading, materially incorrect in fact, and were made knowingly, intentionally, and /or willfully to deceive without regard to the safety and use of the product and were acted on in reasonable reliance by Plaintiff's prescribing

PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED

physicians and medical professionals and Plaintiff, to Plaintiff's substantial detriment and injury.

80.     The AstraZeneca Defendants distributed false and misleading materials to physicians, Plaintiff's physicians and Plaintiff that the FDA "determined to be false, lack in fair balance, or otherwise misleading, and in violation of the Federal Food, Drug and Cosmetic Act and the regulations promulgated thereunder."

81.     The FDA directed that the AstraZeneca Defendants discontinued the use of various promotional materials that were distributed to physicians, Plaintiff's physicians and Plaintiff and stated as follows:

    a.     Materials that state or imply that Seroquel is effective in a broader range of mental conditions, including bipolar disorder and schizoaffective disorder, are misleading (e.g., brochures #SQ1035, #SQ1112). Seroquel is indicated for the manifestations of psychotic disorders as determined by clinical trials in schizophrenic inpatients. Application to broader or additional mental disorders would require substantiation from adequate and well-controlled studies designed to examine the specific mental conditions.

    b.     The mechanism of action of Seroquel, as well as other antipsychotic drugs, is unknown. Therefore, materials that discuss how Seroquel "works" without stressing the theoretical nature of this information, are misleading (e.g., brochures #SQ1059, #PR 1048).

    c.     Materials in which the prominence and readability of the risk information fails to be reasonably comparable to the information regarding the effectiveness of Seroquel lack fair balance (e.g., journal ad #SQ1089, brochure #SQ1139). In addition, materials that fail to disclose the important warnings and precautions (i.e., neuroleptic malignant syndrome, tardive dyskinesia, orthostatic hypotension, risk of cataract development, and seizures) are lacking fair balance because these are considered to be priority safety consideration (e.g., journal #SQ1088).

82.     Material information concerning the development of a serious injury related to the use of Seroquel was fraudulently concealed by the AstraZeneca Defendants from Plaintiff's treating physicians and Plaintiff. The FDA had received reports of 11 Seroquel related deaths and numerous diabetes related injuries. The AstraZeneca Defendants knew or

reasonably should have known of this information and this information was not disclosed to Plaintiff's physicians or to Plaintiff.

83.    As part of the warning label in Japan, the AstraZeneca Defendants were required to disclose that individuals with diabetes or a family history of diabetes should not take Seroquel. This important and material information was not communicated to Plaintiff's physicians or to Plaintiff in the United States.

84.    The AstraZeneca Defendants intended that the Plaintiff's physicians and patients, including Plaintiff would rely upon such misrepresentations.

85.    The AstraZeneca Defendants' representations as set forth above regarding the quality and characteristics of Seroquel were willful and/or reckless misrepresentations of material fact made with the intent to induce Plaintiff and Plaintiff did, without knowledge of their falsity, directly or indirectly, justifiably act upon those willful misrepresentations to Plaintiff's injury.

86.    Plaintiff relied to his/her detriment on these material misrepresentations and suffered serious injuries.

87.    As a result of the foregoing, Plaintiff was caused, and continues to suffer, bodily injury, pain, suffering, emotional anxiety and distress, loss of enjoyment of life, disability, and economic loss.

88.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages and exemplary damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT II
## FRAUDULENT CONCEALMENT

89.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully

17

set forth herein and further alleges as follows:

90. As set forth under **FACTS** herein, and pending discovery, the AstraZeneca Defendants fraudulently concealed from the Plaintiff's physicians and Plaintiff that Seroquel was dangerous and not as effective for its purpose as represented, and imposed greater risks than disclosed.

91. The AstraZeneca Defendants as the manufacturer of ethical drugs were under a duty to timely disclose adequate warnings and information to the medical profession, Plaintiff's physicians and Plaintiff under laws requiring them to engage in false and deceptive trade practices, and because the AstraZeneca Defendants were experts in the field, they are under a continuous duty to keep abreast of scientific developments touching on Seroquel and to know the true state of the facts about the dangerous and defective nature of Seroquel.

92. The AstraZeneca Defendants had actual knowledge gained from research and adverse event reports, and constructive knowledge from scientific literature and other means of communication, to know of the true risk of Plaintiff's use of Seroquel. This medical information was fraudulently concealed from Plaintiff's physicians and Plaintiff.

93. Material information concerning the development of a serious injury related to the use of Seroquel was fraudulently concealed from Plaintiff's treating physicians and Plaintiff. The FDA had received reports of 11 Seroquel related deaths and numerous diabetes related injuries. The AstraZeneca Defendants knew or reasonably should have known of this information and this information was not disclosed to Plaintiff's physicians or to Plaintiff.

94. Significantly, the AstraZeneca Defendants were required to disclose in Japan specific

information that individuals with diabetes or a family history of diabetes should not take Seroquel. This important and significant information was not communicated to Plaintiff's physicians or to Plaintiff in the United States.

95.    The AstraZeneca Defendants also concealed information that in Japan they had warned, that if a patient developed symptoms of hyperglycemia, then patients should be carefully monitored and Seroquel should be discontinued. This material information was not disclosed and was fraudulently concealed from Plaintiff's physicians and Plaintiff in the United States.

96.    These intentional representations suppressed and/or concealed material facts, including but not limited to:

    a.    suppressing and/or mischaracterizing the known risks to health and effectiveness;

    b.    failing to timely and fully disclose the results of tests and studies on the risks to health and effectiveness;

    c.    failing to disseminate adequate warnings which would disclose the nature and extent of the side effects of the product, the risks to health and effectiveness;

    d.    failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical testing had not been done;

    e.    failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done;

    f.    failing to disclose that alternative products and methods available posed less risk than Seroquel and were at least effective;

    g.    failing to conduct adequate tests and studies on the product prior to marketing and making representations as set forth in this complaint;

h.   failing to reveal the full nature and extent of the known risks and hazards associated with Seroquel; and

i.   as otherwise described in this complaint to be discovered during this litigation and to be proven at trial.

97.   Plaintiff had no knowledge of the dangerous risks associated with the use of Seroquel and relied on the AstraZeneca Defendants fraudulent representations and suffered injury as a result thereof.

98.   Plaintiff could not have taken any action to reasonable discover that the AstraZeneca Defendants representations were false and fraudulent.

99.   By reason of the foregoing, Plaintiff was caused, and continues to suffer, bodily injury, pain, suffering, emotional anxiety and distress, loss of enjoyment of life, disability, and economic loss.

100.   By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages and exemplary damages together with interest, the costs of suit and attorneys fees, and such other and further relief as this Court deems just and proper.

## COUNT III
## NEGLIGENCE & RECKLESSNESS

101.   Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set fort herein and further alleges as follows:

102.   The AstraZeneca Defendants were in the business of testing, designing, manufacturing, packaging, promoting, distributing, performing quality assurance evaluations and/or selling Seroquel.

103.   The AstraZeneca Defendants owed a duty of reasonable care to Plaintiff to license, test, design, manufacture, package, properly and adequately warn, promote, distribute,

perform quality assurance evaluations, and/or sell Seroquel in a safe condition.

104.    The AstraZeneca Defendants had a duty not to introduce a pharmaceutical drug, such as Seroquel, into the stream of commerce that caused users of said drug, including Plaintiff to suffer from unreasonable, dangerous and adverse side effects.

105.    The AstraZeneca Defendants breached their duty in that they and/or their agents, servants or employees failed to exercise reasonable care and were negligent and/or were reckless in the licensing, testing, quality assurance, design, manufacture, packaging, warning, advertising, promotion, distribution and sale of the product.

106.    The AstraZeneca Defendants' conduct was wanton, reckless and malicious so as to permit the recovery of punitive damages.

107.    By reason of the foregoing, Plaintiff was caused, and continues to suffer, bodily injury, pain, suffering, emotional distress and anxiety, loss of enjoyment of life, disability, and economic loss.

108.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages and exemplary damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT IV
## NEGLIGENT MISREPRESENTATIONS

109.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

110.    The AstraZeneca Defendants, in addition to making knowing misrepresentations, mad misrepresentations without any reasonable grounds for believing its statements to be true to Plaintiff, other patients, and the medical and psychiatric communities.

111.    The AstraZeneca Defendants, through their misrepresentation, intended to induce

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

justifiable reliance by Plaintiff, other patients, and the medical and psychiatric communities.

112. The AstraZeneca Defendants, through their marketing campaign and communications with treating physicians or psychiatrists, were in a relationship so close to that of Plaintiff and other patients that it approaches and resembles privity.

113. The AstraZeneca Defendants owe a duty to the medical and psychiatric communities, Plaintiff, and other consumers, to conduct appropriate and adequate studies and tests for all of its products, including Seroquel, and to provide appropriate and adequate information and warnings.

114. The AstraZeneca Defendants failed to conduct appropriate or adequate studies for Seroquel. The AstraZeneca Defendants failed to exercise reasonable care by failing to conduct studies and tests of Seroquel.

115. By reason of the foregoing, Plaintiff was caused, and continues to suffer, bodily injury, pain, suffering, emotional distress and anxiety, loss of enjoyment of life, disability, and economic loss.

116. By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages and exemplary damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

**COUNT V**
**STRICT PRODUCTS LIABILITY - FAILURE TO WARN**

117. Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

118. The AstraZeneca Defendants, as a manufacturer of pharmaceuticals, had a duty to warn of adverse drug reactions, which they know or have reason to know, are inherent in the

use of its pharmaceutical products.

119. The AstraZeneca Defendants failed to adequately warn Plaintiff, Plaintiff's physicians, and the general public of the risks of Seroquel being used by Plaintiff.

120. The AstraZeneca Defendants failed to adequately warn of dangers inherent with the use of Seroquel and the AstraZeneca Defendants' misrepresentations and inadequate disclosures to the Plaintiff's physicians, Plaintiff, and the general public, made the product unreasonably dangerous for normal use.

121. The AstraZeneca Defendants are strictly liable in tort to the Plaintiff upon the grounds that:

    a.    Seroquel was unsafe, defective and unreasonably dangerous for its intended and/or foreseeable uses, by reason of inadequately warning and/or inadequately communicating warnings.

    b.    In distributing, promoting and selling Seroquel not accompanied by adequate warnings of the dangers that were known or should have been known; by failing to provide adequate warnings regarding all known or reasonably knowable potential side effects associated with the use of Seroquel, and the comparative nature, extent, severity, incidence and duration of such adverse effects; failing to provide adequate warnings regarding the signs, symptoms, incidence, scope or severity of the side effects, and/or identify appropriate testing, monitoring and/or remedial action; failing to provide adequate warnings in a timely manner and information necessary for their purposes, thus placing the Plaintiff and consuming public at risk.

    c.    The AstraZeneca Defendants were aware that Seroquel would be used without

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

inspection and study for the defects inherent in Seroquel as alleged, and that given the resources of the Plaintiff and their physicians, any reasonable anticipated inspection would have failed to detect the defects;

d.   The AstraZeneca Defendants expected and knew that Seroquel would reach the consuming public and Plaintiff. Seroquel was, in fact, received by Plaintiff without change in the condition in which the drug and its labeling was first manufactured and sold.

e.   Plaintiff was a foreseeable user of the product in its intended manner and suffered serious harm because of said use.

122.   The Seroquel manufactured and/or supplied by the AstraZeneca Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after the AstraZeneca Defendants knew or should have known of the risks of injury from Seroquel use, they failed to provide adequate warnings to consumers of the product, including Plaintiff, and continued to aggressively promote Seroquel.

123.   By reason of the foregoing, Plaintiff was caused, and continues to suffer, bodily injury, pain, suffering, emotional distress and anxiety, loss of enjoyment of life, disability, and economic loss.

124.   By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages and exemplary damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

### COUNT VI
### STRICT LIABILITY - DEFECTIVE DESIGN

125.   Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

126.  The Seroquel manufactured and/or supplied by the AstraZeneca Defendants was placed into the stream of commerce in a defective and unreasonably unsafe condition in that the foreseeable risks of its use exceeded the benefits associated with the design or formulation.

127.  The AstraZeneca Defendants knew or should have known at the time of manufacture that Seroquel was defective in design or formulation and that Seroquel created a risk of harm to consumers such as Plaintiff when used in the way it was intended to be used, and in a manner which was reasonably foreseeable by the AstraZeneca Defendants.

128.  The Seroquel manufactured and/or supplied by the AstraZeneca Defendants was placed into the stream of commerce when they knew or should have known of the defective design or formulation and a reasonable person would have concluded that the utility of Seroquel did not outweigh the risk inherent in marketing Seroquel designed in that manner.

129.  As set forth in this complaint and otherwise, the AstraZeneca Defendants knew of Seroquel's defective nature at the time of its manufacture, but continued to design, manufacturer, market, promote, and represent to the consuming public, prescribing doctors, and Plaintiff that Seroquel was safe for the sole purpose of maximizing sales and profits at the expense of the public health and safety in conscious disregard of foreseeable harm caused by Seroquel.

130.  By reason of the foregoing, Plaintiff was caused, and continues to suffer, bodily injury, pain, suffering, emotional distress and anxiety, loss of enjoyment of life, disability, and economic loss.

131.  By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages

PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED

and exemplary damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT VII
## BREACH OF EXPRESS WARRANTY

132.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

133.    The AstraZeneca Defendants expressly warranted that Seroquel was safe for its intended use and as otherwise described in this complaint.  Seroquel did not conform to these express representations, including, but not limited to, the representation that it was well accepted in patient studies, the representation that it was safe, and the representation that it did not have high and/or unacceptable levels of life-threatening side effects and as otherwise set forth in this complaint and/or AstraZeneca Defendants' materials.

134.    The express warranties represented by AstraZeneca Defendants were a part of the basis for Plaintiff's use of Seroquel.

135.    At the time of the making of the express warranties, the AstraZeneca Defendants had knowledge of the purpose for which the aforestated product was to be used and warranted same to be in all respects safe, effective and proper for such purpose.

136.    Seroquel does not conform to these express representations because Seroquel is not safe or effective and may produce serious side effects, including among other things, diabetes, pancreatitis, ketoacidosis and death.

137.    By reason of the foregoing, Plaintiff was caused, and continues to suffer, bodily injury, pain, suffering, emotional distress and anxiety, loss of enjoyment of life, disability, and economic loss.

138.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages

and exemplary damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT VIII

## BREACH OF IMPLIED WARRANTY AND FITNESS FOR A PARTICULAR PURPOSE

139.   Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

140.   The AstraZeneca Defendants impliedly warranted that it would sell and deliver Seroquel in a condition that was fit for the particular purposes for which it was intended.

141.   The AstraZeneca Defendants knew that Plaintiff intended to use the Seroquel for the particular purpose of medication and that as such, that the medication needed to be safe for use by Plaintiff.

142.   Plaintiff relied upon the AstraZeneca Defendants' skill and/or judgment in their ability to furnish suitable Seroquel that was safe for its intended use.

143.   The Seroquel was not safe for its intended use in that it was defective and caused serious side effects and the AstraZeneca Defendants therefore breached its implied warranty of fitness for a particular purpose.

144.   As a direct and proximate result of the foregoing, Plaintiff was caused, and continues to suffer, bodily injury, pain, suffering, emotional distress and anxiety, loss of enjoyment of life, disability, and economic loss.

145.   By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages and exemplary damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT IX
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

146.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

147.    At all times material hereto, the AstraZeneca Defendants marketed, sold and distributed Seroquel and knew and promoted the use for which the aforesaid drug was being used by Plaintiff and impliedly warranted to Plaintiff that Seroquel was of merchantable quality and fit for the ordinary purpose for which it was intended.

148.    Plaintiff reasonably relied on the skill, expertise, and judgment of the AstraZeneca Defendants and its representations as to the fact that Seroquel was of merchantable quality.

149.    The Seroquel manufactured and supplied by the AstraZeneca Defendants was not of merchantable quality, as warranted by the AstraZeneca Defendants, in that the drug had dangerous and life threatening side effects and was thus not fit for the ordinary purpose for which it was intended.

150.    As a direct and proximate result of the foregoing, Plaintiff was caused, and continues to suffer, bodily injury, pain, suffering, emotional distress and anxiety, loss of enjoyment of life, disability, and economic loss.

151.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages and exemplary damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

## COUNT X
## VIOLATIONS OF STATE CONSUMER PROTECTION LAWS

152. Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

153. As set forth herein, the AstraZeneca Defendants have intentionally and wrongfully represented deceptive, inaccurate, false and misleading material information as to the safety of Seroquel to Plaintiff's treating physicians, Plaintiff, and other consumers.

154. The AstraZeneca Defendants knew or reasonably should have known that Seroquel carried the risk of serious adverse effects, including diabetes, pancreatitis, hyperglycemia, diabetic ketoacidosis, diabetic coma, and death to its intended users, including Plaintiff.

155. As set forth herein, the AstraZeneca Defendants' actions were designed to increase demand for Seroquel.

156. The AstraZeneca Defendants have knowingly and willingly violated the State's Consumer Protection Laws, and thereby engaged in deceptive acts or practices in that:

   a. The AstraZeneca Defendants failed to disclose material facts in the conduct of trade or commerce in that they did not disclose the risk of serious adverse effects to the intended users of Seroquel.

   b. The AstraZeneca Defendants have made false or misleading statements concerning the safety of Seroquel in order to increase demand for Seroquel.

   c. The AstraZeneca Defendants have knowingly made false representations in a business transaction by representing that the information provided is accurate.

157. By reason of the foregoing, Plaintiff was caused, and continues to suffer, bodily injury, pain, suffering, emotional distress and anxiety, loss of enjoyment of life, disability, and economic loss.

158.    The AstraZeneca Defendants' acts, representations and/or omissions constitute unconscionable commercial practices in connection with the sale of merchandise and false advertising and were deceptive and misleading practices within the meaning of <u>Cal. Bus. & Prof. Code §§ 17200</u>, et seq. and the Consumer Legal Remedies Act, <u>Civ. Code § 1750</u> et seq.

159.    By reason of the foregoing, Plaintiff is entitled to damages and attorneys' fees as permitted by the consumer protection laws.

### COUNT XI
### STATE STATUTORY PRODUCTS LIABILITY LAW

160.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

161.    To the extent the state where plaintiff resides has statutory product liability law in addition or in lieu of the common law allegations set forth above, plaintiff hereby pleads and incorporates by reference those statutory allegations.

162.    By reason of the foregoing, Plaintiff is entitled to damages and attorneys fees as permitted by law.

### COUNT XII
### UNJUST ENRICHMENT

163.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

164.    To the detriment of Plaintiff, the AstraZeneca Defendants have been, and continue to be, unjustly enriched as a result of the unlawful and/or wrongful collection of, inter alia, payments for Seroquel.

165.    Plaintiff was injured by the cumulative and indivisible nature of the AstraZeneca

Defendants' conduct. The cumulative effect of the AstraZeneca Defendants' conduct directed as physicians and consumers was to artificially create demand for Seroquel at an artificially inflated price. Each aspect of the AstraZeneca Defendants' conduct combined to artificially create sales of Seroquel.

166.    The AstraZeneca Defendants have unjustly benefited through the unlawful and/or wrongful collection of, inter alia, payments for Seroquel and continue to so benefit to the detriment and at the expense of Plaintiff.

167.    Accordingly, Plaintiff seeks full disgorgement and restitution of the AstraZeneca Defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against each Defendant individually and/or jointly for compensatory damages and punitive damages together with interest, costs of suit, and attorney's fees, and such other relief as the court deems proper and as follows:

A.    Damages in an amount to be determined at trial;

B.    Pre-judgment and post-judgment interest at the maximum rate allowable by law;

C.    Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

D.    The costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorneys' fees;

E.    All statutory damages;

F.    Such other and further relief available under all applicable state or federal law and any relief the Court deems just and appropriate.

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all Counts and as to all issues.

Dated: _0-08 c 1_____

Respectfully Submitted:

By:_____
William E. Berg (Bar Roll #92095)
BERG INJURY LAWYERS
640 Watt Avenue
Suite 100
Sacramento, CA  95864
Telephone:  (916) 641-5800
Facsimile:  (916) 641-2629

Philip Bohrer (Louisiana #14089)
Scott E. Brady (Louisiana #24976)
BOHRER LAW FIRM, L.L.C
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 925-5297
Facsimile: (225) 231-7000

**PLAINTIFF'S ORIGINAL COMPLAINT TRIAL BY JURY DEMANDED**

10741841.tif - 1/10/2008 10:31:54 AM